**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00185-CR**
_____

**ANTIWAN DONTABIYA LANE, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-09-12978-CR**

**MEMORANDUM OPINION**

A jury found Antiwan Dontabiya Lane guilty of the felony offense of aggravated sexual assault and assessed his punishment at life imprisonment. In twelve issues, Lane challenges voir dire conducted in his absence, his right to self-representation, his right to retain an attorney of his choice, the voluntariness of his waiver of counsel, the trial court's denial of admission of the entire Cellebrite report, and the trial court's order that he be restrained during trial. After reviewing the record and the parties' arguments, we affirm the trial court's judgment.

1

## Background

On December 9, 2021, a Montgomery County grand jury indicted Lane on one count of aggravated sexual assault, a first-degree felony. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A). According to the indictment, on or about September 14, 2021, Lane penetrated the anus and sexual organ of Cathy,[1] without her consent, and placed Cathy in fear that death or serious bodily injury would be imminently inflicted on any person. On September 23, 2021, after his arrest, the trial court appointed Michael Valdez to represent Lane. On Lane's behalf, Valdez filed a Motion for Speedy Trial on March 1, 2022. Trial was set for June 27, 2022.

On June 14, 2022, a hearing on the State's Motion for Continuance due to the pending DNA analysis was held, and the trial court continued the case to July 18, 2022. At the hearing, Lane asked if his trial date would remain the same if he hired an attorney, and he asked if he could represent himself. The trial court questioned Lane's legal knowledge where Lane admitted that he did not have a law degree, did not know about the Texas Rules of Evidence or the Texas Code of Criminal Procedure, had never represented himself in a criminal action, did not know the grounds for excusing a juror for cause, did not know how to move for a mistrial or

---

[1]We refer to the victim by a pseudonym to conceal their identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[]").

the grounds for it, and did not know how to request and object to jury instructions. The trial court strongly advised Lane to be represented by a trained lawyer and urged Lane and Valdez to talk and determine whether their issues could be resolved.

After a brief recess, Lane indicated that he did not want Valdez to represent him, and the trial court appointed Judith Shields to represent Lane. Two days later, the State filed a Notice of Enhancement that indicated that Lane was previously convicted of voluntary manslaughter, aggravated assault, and criminal solicitation on September 13, 2021, in Dekalb County, Georgia. The Notice indicated that Lane was also convicted of felony statutory rape on June 14, 2004, in Fulton County, Georgia.

On June 27, 2022, Lane's counsel, Judith Shields, filed a Motion for Continuance from the July 18, 2022, trial setting based on her unavailability due to a medical procedure and the voluminous discovery she needed to review to prepare for trial. On June 30, 2022, the trial court granted the continuance and reset the trial for September 19, 2022.

In July 2022, the State filed its Notice of Extraneous Offenses Under TRE 404(b) and TRE 609 and CCP Art. 38.37, Art. 38.371, and Art. 37.07. The Notice indicated that the State intended to offer evidence of and prove the following bad acts and/or criminal convictions of Lane:

3

- Theft by receiving stolen property on July 3, 1995, in Jefferson County, Georgia;

- Unlawful possession of cocaine, a schedule II controlled substance on or about September 5, 2002, in Clayton County, Georgia;

- Intentionally giving a false or fictitious name to a peace officer who lawfully arrested or detained Lane on or about September 5, 2002, in Clayton County, Georgia;

- Intentionally or knowingly possessing a usable quantity of marijuana in the amount of two ounces or less on or about September 5, 2002, in Clayton County, Georgia;

- Unlawfully purchase, possess or control a controlled substance on him about March 2, 2003, in Clayton County, Georgia and deferred on June 28, 2004, in the Superior Court of Clayton County, Georgia;

- Intentionally or knowingly possessing a usable quantity of marijuana in the amount of two ounces or less on or about March 2, 2003, in Clayton County, Georgia and deferred on June 28, 2004, in the Superior Court of Clayton County, Georgia;

- Intentionally, knowingly or recklessly cause bodily injury to Cathy, a member of Lane's family, by striking Cathy on the head with his fist

while Cathy was driving on January 1, 2004, in Jefferson County, Georgia;

- Convicted of a felony, statutory rape on June 14, 2004, in Fulton County, Georgia in Cause No. 03SC11196;

- Convicted of a felony violation of Georgia Controlled Substances Act on September 14, 2004, in Clayton County, Georgia in Cause No. 2003CR01745-07;

- Intentionally, knowingly or recklessly cause bodily injury to Cathy, a member of Lane's family, by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of Cathy by applying pressure to Cathy's throat or neck while she was driving on or about January 1, 2005, in Jefferson County, Georgia;

- Failed to register as required by the Sex Offender Registration Program on or about January 2, 2007, in Dekalb County, Georgia;

- Violated the terms of his probation in Cause No. 03SC11196 on or about June 7, 2007, in Fulton County, Georgia;

- Drove or being in actual physical control of any moving vehicle while his alcohol concentration was .08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical

5

control ended on or about October 18, 2008, in Emanuel County, Georgia;

- Violated the terms of his probation in Cause No 03SC11196 on or about November 25, 2009, in Fulton County, Georgia;

- Knowingly and willfully obstruct or hinder a law enforcement officer in the lawful discharge of his duties on or about January 10, 2010, in Jefferson County, Georgia; and deferred on July 7, 2010, in the State Court of Jefferson County, Georgia;

- Threaten to commit a crime of violence with the purpose of terrorizing another, on or about January 10, 2010, in Jefferson County, Georgia;

- Intentionally cause substantial physical harm to Linda Yun, a member of Lane's household, by impeding the normal breathing or circulation of the blood of Linda Yun by applying pressure to Linda Yun's neck or by blocking her nose or mouth on or about February 21, 2010, in Gwinnett County, Georgia;

- Intentionally cause substantial physical harm to Elijah Harris, a member of Lane's household, by striking and throwing Elijah Harris with his hands on or about February 21, 2010, in Gwinnett County, Georgia;

6

- Intentionally commit a family violence battery having knowledge that a child under the age of eighteen was present to see or hear the act, on or about February 21, 2010, in Gwinnett County, Georgia;

- Violated the terms of his probation in Cause No. 03SC11196, on or about March 12, 2010, in Fulton County, Georgia;

- Convicted of a misdemeanor simple assault on May 10, 2010, in Jefferson County, Georgia;

- Commit an act placing Hector Gonzales in a reasonable apprehension of immediately receiving violate injury, discharging a firearm during an argument with Gonzales on or about February 12, 2011, in Dekalb County, Georgia;

- Intentionally cause substantial physical harm to Sophia Gonzales by grabbing her with his hands on or about February 12, 2011, in Dekalb County, Georgia;

- Willfully fail or refuse to stop his vehicle or otherwise flee or attempt to elude a pursuing police vehicle or officer when given a visual or an audible signal to bring the vehicle to a stop on or about February 27, 2011, in Fulton County, Georgia;

- Violated the terms of his probation in Cause No. 03SC11196 on or about March 17, 2011, in Fulton County, Georgia;

- Knowingly and willfully obstruct or hinder a law enforcement officer in the lawful discharge of his duties on or about November 19, 2011, in Fulton County, Georgia;

- Failed to register as required by the Sex Offender Registration Program on or about November 19, 2011, in Fulton County, Georgia;

- Unlawfully, with intent that another person engage in conduct constituting a felony, solicit "Fiend" to commit felony offense of Murder, to unlawfully kill Hector Gonzales on or about December 26, 2011, in Dekalb County, Georgia;

- Unlawfully, with intent that another person engage in conduct constituting felony, solicit Kevin Stallworth to commit the felony offense of Murder, to unlawfully kill Hector Gonzales on or about December 26, 2011, in Dekalb County, Georgia;

- Assault Ivan Perez with a deadly weapon, a handgun on or about December 26, 2011, in Dekalb County, Georgia;

- Unlawfully have on or within arm's reach of his person a handgun, a firearm, during the commission of the crime of aggravated assault, a crime involving the person of Ivan Perez on or about December 26, 2011, in Dekalb County, Georgia;

8

- Intentionally and knowingly possess a firearm after being convicted of the felony offense of statutory rape on June 14, 2004, on or about December 30, 2011, in Dekalb County, Georgia;

- Intentionally and knowingly possess a cellular telephone while in the custody of a secure correctional facility, Telfair State Prison, on or about February 6, 2014, in Telfair County, Georgia;

- Intentionally and knowingly threaten imminent bodily injury to an inmate during the commission of the assault and used or exhibited a deadly weapon, a sharp pointed metal object, on or about February 25, 2017, in Telfair County, Georgia;

- Initiated communication with Cathy with the intent to harass, annoy, alarm, abuse, torment or embarrass Cathy, and in the course of the communication make a comment, request, suggestion or proposal that is obscene including telling Cathy that whatever he did to hurt her he wishes he could "do it ten more [expletive] times" because she deserves it;

- Convicted of voluntary manslaughter on September 13, 2021, in Dekalb County, Georgia in Cause No. 12CR6338;

- Convicted of aggravated assault on September 13, 2021, in Dekalb County, Georgia in Cause No. 12CR6338;

- Convicted of felony criminal solicitation on September 13, 2021, in Dekalb County, Georgia in Cause No. 12CR6338;

- Intentionally, knowingly, and recklessly caused bodily injury to Hunter Hutchins, by striking Hutchins with his hand on or about November 21, 2021, in Montgomery County, Texas; and

- Intentionally and knowingly engage in numerous threatening, harassing, and intimidating conversations with Cathy on or about January 1, 2002, and continuing through September 14, 2022.

On August 30, 2022, the State filed its Motion for Continuance based on the forensic nurse being unavailable as she would be out of the country. On September 1, 2022, the trial court held a hearing on the State's Motion for Continuance and granted the motion. The case was reset to November 14, 2022.

On November 3, 2022, both sides announced ready for trial, and the trial court preferentially set the case for jury trial on November 14, 2022. At the conclusion of pretrial, Lane expressed his desire to hire counsel of his choice. On November 14, 2022, Lane's attorney, Shields, filed a Motion to Withdraw as Attorney of Record. The motion indicated that Lane was hiring counsel of his choice and that the case was set for a jury trial on January 9, 2023. The motion was granted and the order signed November 16, 2022.

On January 5, 2023, a status hearing was held and Lane attended pro se and indicated that he had not hired counsel. On January 19, 2023, another status hearing was held, and Lane again appeared pro se. Lane indicated that he was having a problem with the funds in his bank account and the trial court encouraged him to accept a court-appointed attorney. The trial court denied Lane's request for funds to hire counsel and gave him time to consider a court-appointed attorney.

On January 25, 2023, the trial court appointed Benton Baker to represent Lane. On January 31, 2023, a status hearing was held where Baker requested time to review the file and prepare for trial. Trial was set for June 26, 2023.

On May 5, 2023, Baker filed a Motion to Withdraw as Counsel and indicated that Lane called him racist and refused to communicate with him or cooperate with his investigative efforts. The motion stated that Lane indicated he is hiring counsel and that trial was set for June 26, 2023. At the hearing, Lane again stated that he wanted to hire an attorney and asked for cash bond. The State reminded the trial court that Lane had a hold from Georgia for a probation violation.

On May 18, 2023, the State filed its First Supplemental Notice of Extraneous Offenses Under TRE 404(b) and TRE 609 and CCP Art. 38.37, Art, 38.371 and Art. 37.07. The notice stated that on or about January 2, 2023, Lane contacted the victim, Cathy, in this aggravated sexual assault offense and that he did so to coerce Cathy to "abstain from, discontinue, or delay the prosecution of another."

On August 17, 2023, the trial court held a hearing on Lane's Motion for Continuance and his Motion to Reduce Bond. The trial was continued until October 2023. The trial court also heard and granted Baker's Motion to Withdraw as Counsel, after Lane accused him of being a racist and told Baker to sit his "bitch ass down[.]" The trial court admonished Lane about his "totally, totally disrespectful behavior to everybody here[,]" and told him he would not act that way.

That same day, the trial court appointed Steve Dennis to represent Lane. A little over a month later, on September 21, 2023, Dennis filed a Motion to Withdraw as Counsel that indicated that Lane called him racist, refused to refrain from cursing at him, hung up on a Zoom call, and indicated that he wished to hire his own counsel. The trial court granted the motion on September 28, 2023.

In a note to the trial court, Lane stated that a non-profit group was assisting in finding an attorney to take his case, and he requested a status hearing and a speedy trial. The trial court set a status hearing to determine whether Lane hired or contacted an attorney of his choice. That same day, Lane, pro se, filed a Motion for Speedy Trial.

On November 28, 2023, a status hearing was held, and it was determined that Lane had not hired counsel. So, Lane requested the trial court appoint counsel. The trial court appointed Joseph Krippel to represent Lane.

12

On May 6, 2024, Lane's trial began. On May 10, 2024, the jury convicted Lane of aggravated sexual assault. Having convicted Lane of aggravated sexual assault, the jury found true the enhancement that Lane was convicted of statutory rape, a felony, on June 14, 2004, in Fulton County, Georgia, he was sentenced to life imprisonment. This appeal followed.

Lane challenges his conviction in twelve issues on appeal. Lane's first four issues involve his removal from the courtroom during jury selection and the continuation of jury selection in his absence. Lane argues that it violated his constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and article 1, section 10 of the Texas Constitution. *See* U.S. CONST. amends. VI, XIV; Tex. Const. art. I, § 10. Lane also argues that his removal violated Texas Code of Criminal Procedure article 33.03. *See* Tex. Code Crim. Proc. Ann. art. 33.03. According to Lane, a defendant's right to be present during voir dire cannot be waived, and he had a right to be in the courtroom through jury selection.

In issues five and six, Lane challenges his representation and argues the trial court abused its discretion by denying him the opportunity to retain an attorney of his own choosing and ordering him to represent himself. Lane also argues that he was ordered to represent himself after he involuntarily waived counsel in issues seven and eight.

In issues nine through eleven, Lane challenges the denial of admission of the full Cellebrite report of Lane's cell phone records and argues that the document was properly authenticated, was an admission of a party opponent and therefore did not constitute hearsay and abrogated his right to present a defense.

In issue twelve, Lane argues the trial court abused its discretion by ordering that he be tried with his ankles shackled and chains around his waist and arms.

**Courtroom Removal**

In his first four issues, Lane challenges his removal from the courtroom before and during voir dire. "We review a trial court's decision to exclude a criminal defendant from trial for an abuse of discretion." *Morrison v. State*, 480 S.W.3d 647, 655 (Tex. App.—El Paso 2015, no pet.) (citing *Kessel v. State*, 161 S.W.3d 40, 47 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)) (other citation omitted); *see also Illinois v. Allen*, 397 U.S. 337, 338 (1970) (stating that courts must be given sufficient discretion to determine appropriate manner of handling disruptive defendant in courtroom). We "uphold the trial court's ruling so long as it is 'within the zone of reasonable disagreement.'" *Kessel*, 161 S.W.3d at 44 (quoting *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002)). "In determining whether a trial judge's decision to involuntarily remove a disruptive defendant from the courtroom was reasonable, we must evaluate and balance two important legal principles: (1) the constitutional and statutory right of the criminally accused to be

physically present at all phases of the proceeding against him; and (2) the responsibility of the trial judge to maintain appropriate courtroom decorum." *Pool v. State*, No. 07-18-00358-CR, 2020 WL 4260377, at *5 (Tex. App.—Amarillo July 14, 2020, pet. ref'd) (citation omitted).

A criminal defendant has a constitutional and statutory right to be present at all stages of a trial for a felony offense. *See* U.S. CONST. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 33.03; *Routier v. State*, 112 S.W.3d 554, 575-77 (Tex. Crim. App. 2003). The Sixth Amendment's right of confrontation requires any defendant threatened with the loss of liberty to be physically present at all phases of the criminal proceedings against him. *See* U.S. CONST. amend VI; *see also Allen*, 397 U.S. at 338; *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985). The Texas Constitution guarantees that right and provides the defendant with a similar right to be present in the courtroom during his trial. *See* Tex. Const. art. I, § 10; *Miller*, 692 S.W.2d at 90. That said, a defendant may waive this right if he voluntarily absents himself from the proceedings. *See* Tex. Code Crim. Proc. Ann. art. 33.03; *see also Lira v. State*, 666 S.W.3d 498, 512–13 (Tex. Crim. App. 2003). A defendant can lose his constitutional right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he continues to conduct himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. *Ramirez v.*

15

*State*, 76 S.W.3d 121, 130 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("As the trial court lacked reason to believe appellant's misbehavior would cease, appellant's expulsion was not constitutionally improper.").

In that same vein, the right of an accused to be physically present in the courtroom is not an absolute unlimited right because a trial judge may, at his reasonable discretion, find it necessary to remove a defendant from the courtroom when the accused is acting in a "disruptive, obstreperous, or contemptuous manner." *Morrison*, 480 S.W.3d at 656 (citing *Allen*, 397 U.S. at 343-44). It is "essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings" and the "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Allen*, 397 U.S. at 343. The Supreme Court has provided that a trial court may deal with a disruptive defendant in at least "three constitutionally permissible ways": (1) allowing the defendant to remain in the courtroom, but be bound and gagged; (2) citing the defendant for contempt, which could require the court to discontinue the trial and imprison the defendant until such time as the defendant promises to behave himself; and (3) removing the defendant from the courtroom "until he promises to conduct himself properly." *Id*. at 344-45.

Additionally, article 33.03 of the Texas Code of Criminal Procedure provides a defendant an additional statutory right to remain in the courtroom until the jury has

16

been selected. Tex. Code Crim. Proc. Ann. art. 33.03. The Court of Criminal Appeals has determined that based on article 33.03, the right of an accused to be present at trial is unwaivable until the jury has been selected. *See Miller*, 692 S.W.2d 91; *see also Lira*, 666 S.W.3d at 512.

Before voir dire, Lane addressed the trial judge regarding his displeasure with his appointed counsel, Krippel. Lane stated that he contacted two attorneys, and one attorney indicated that she would be ready for trial. Lane stated that he was ready to go to trial but that he could not go to trial with Krippel because Krippel was not looking out for his best interest, though the female attorney he spoke with would. Lane indicated that the female attorney did not want to appear at trial and be forced to try the case today because she would need a few weeks to prepare. Lane stated that he had money to pay the attorney.

In response, the State objected to Lane's request and stated that the female attorney could have made an appearance to discuss representing Lane. The State recalled that they "have been here before, sitting here with a panel out front, and you granted a continuance on that date to give the Defense extra time."

The trial judge then summarized Lane's previously appointed attorneys and stated there were at least three before Krippel, and that Lane demonstrated outrageous behavior with Mr. Baker when he cursed him in front of the court and could have been held in contempt. The trial judge then recognized Lane's right to

represent himself and acknowledged that she had previously gone over the *Faretta* warnings with him but asked again.

Lane stated that he had never represented himself in a criminal action and was aware the maximum sentence for aggravated sexual assault was life. Lane indicated that he was unfamiliar with the Texas Rules of Evidence and did not respond regarding whether he was familiar with the Texas Rules of Criminal Procedure. He also stated that he did not know the grounds for objections or mistrial and did not know how to conduct voir dire.

The trial judge found Lane's actions dilatory in nature and stated that Lane had the right to represent himself and that Krippel would be at the table with him to protect the record. Lane then stated that he did not want Krippel anywhere around him.

The discussion then turned to the many attorneys the trial court had appointed and whether Lane wanted to change into civilian clothes for trial. Lane indicated that his clothes were lost, and Krippel advised him of his right to be in civilian clothes. At that point, Lane became very upset about Krippel talking to him and stated that Krippel was not his attorney, though the trial judge interjected that Krippel was still his attorney until she removed him. Lane continued to make statements about the State and his bond situation, and the trial judge told him to stop talking several times. At one point, Lane said, "No. I'm not finished." Lane continuously interrupted court

18

proceedings and insisted that the prosecutor was "looking at [him] like she got a problem[.]" Lane was warned several times about the decorum of the courtroom and that he could be removed if he continued to misbehave.

As his attorney, Krippel advocated for Lane and requested more time for Lane to hire an attorney of his choice given that certain bond money would likely be released within the next thirty days. The State objected based on balance of the defendant's rights with the victim's rights as Lane had ample time to hire an attorney and refused representation of qualified appointed attorneys several times.

The trial judge then stated that Lane would be better represented by and defended by a trained lawyer, and it was unwise for him to represent himself. She stated that Lane was unfamiliar with the law, rules of evidence, court procedure, Texas Code of Criminal Procedure, and voir dire in a very serious offense. Despite Lane stating that he talked to the attorney all week and needed twenty-four hours for her to make an appearance, the trial judge stated that she had no assurance of him hiring an attorney anymore given the months they had given him to hire an attorney in the past. She explained that she was not appointing another attorney, that Krippel would sit at the table with him to protect the record, and Lane could represent himself.

The trial judge then admonished Lane and stated the following:

-- if your behavior in this courtroom should be disruptive -- because I am trying to keep the order and decorum of this courtroom present and

19

viable and in good standing. There are three -- three different options that this Court would have. First of all, we could bind and gag you as a last resort. Keeping you present in the courtroom, but where you cannot speak or say anything else, which I would hate to do because if I'm looking at the decorum of this courtroom, that does not add to that at all. I could cite you for criminal or civil contempt. Or you could be removed from the courtroom while the trial continues until you promise to behave properly. So, those are the three things I'm warning you about now. Because I'm finding by the way you interrupt me when we're talking that -- that that would -- those kinds of warnings would probably be necessary right now. All right.

Lane then continued to complain about Krippel, and the trial judge again reminded him of the three options if he continued his disruptive behavior. When asked if he understood, Lane stated that he did not understand what was going on right then. The trial judge responded that she did not find that to be the case, and she ordered Krippel to sit near Lane if he did not want Krippel at the table. The trial judge stated that Lane was representing himself, but Krippel was appointed as standby counsel. Lane continued to interrupt and asked for twenty-four hours for the other attorney to make an appearance because that is who would be picking his jury, and he refused to answer the trial judge about his courtroom attire. It was during this time that Lane had a violent outburst and attacked Krippel by grabbing Krippel's shirt and tie. Lane signaled for Krippel to come over and then grabbed him by the tie and shirt before the attorney was able to free himself with the help of the bailiffs.

After continued interruptions and argumentative statements during the Motion in Limine discussions, Lane was removed from the courtroom and the discussions

20

continued. The trial judge noted on the record that even after he was removed from the courtroom, Lane was still yelling and arguing in the back. The judge indicated that Lane could not return until he promised to behave.

While discussing the Motion in Limine the trial judge indicated that Lane was being brought back over, and he would be given a chance if he promised to behave in the courtroom. The judge later indicated that the bailiff informed Lane that he could come back if he promised to behave, but Lane refused to come back and kept changing the subject. The judge asked that Lane's attorney, Krippel, conduct voir dire at which point, Krippel objected to voir dire in Lane's absence as a constitutional violation. The judge indicated that based on *Allen* it could proceed with trial despite a defendant's conduct to prevent trial from moving forward. The bailiff indicated that Lane "just keeps going on" and the judge indicated that Lane was refusing to promise that he would behave and she overruled Krippel's objection. The judge instructed Krippel to conduct voir dire.

Before voir dire began, the bailiff indicated that Lane requested to be brought to the courtroom. Once in the courtroom, Lane indicated that he wanted twenty-four hours to get an attorney of his choice, and he said no when asked if he would behave so he was removed. The bailiff later indicated that Lane was in a holding cell, and they had to sit on him. The judge indicated that they would inform Lane as often as possible that he could return to court when he agrees to behave. It was put on the

record, that Lane's removal was the least restrictive means of allowing trial to move forward and ensure everyone's safety. The judge indicated that Lane was asking to be returned to jail, however, the judge refused because Lane needed to be brought over regularly to be asked if he would behave.

Once the panel was sworn, the attorneys had a bench conference where the judge indicated that Lane told the bailiffs that he would behave but then started banging on the door. Word was sent to Lane asking if he wanted to change clothes.

The record showed that as voir dire continued, Lane indicated that he was having chest pains, and an ambulance was en route. Later, the bailiff indicated that Lane was going to the emergency room and would likely be there two to three hours. The judge indicated that they would proceed with voir dire and seat the jury but would not start taking evidence.

Once voir dire concluded, the discussion about Lane continued. The judge was informed by the sergeant that Lane had returned from the hospital and wanted to address the Court, but the bailiff was concerned about Lane's current behavior. A sergeant indicated Lane was violent in the cell and could hurt himself, but the trial judge ordered that he be brought into the courtroom. Once in the courtroom, Lane blamed his behavior and outburst on Krippel calling him a vulgar word. When asked if he would behave, Lane did not answer her question but stated that he wanted an attorney of his choice and not someone that would call him a vulgar word. Lane

added that he had not had phone access for four days because the phones did not work. The judge informed Lane that trial would start at 9 a.m., and he needed to decide whether he would change clothes. Lane continued interrupting the judge by stating that he did not pick the jury, and she allowed someone that called him a vulgar word to pick his jury. The judge indicated that she did not hear Krippel say anything vulgar, and Lane was eventually taken out of the courtroom. Krippel denied Lane's allegations and stated that he said nothing to him when Lane called him over and pulled his tie and shirt.

First, we address Lane's argument that his removal before voir dire violated article 33.03. The record demonstrates that Lane was disruptive, disrespectful, and unruly before voir dire, and this behavior left the trial court with no less restrictive manner to proceed with trial other than removing him from the courtroom. To the extent that Lane's removal prior to voir dire violated article 33.03, we conclude any error was harmless. We may only reverse a statutory error if we determine the error affected a substantial right. *Tracy v. State*, 14 S.W.3d 820, 826–27 (Tex. App.—Dallas 2000, pet. ref'd) (explaining that a violation of article 33.03 is subject to a harm analysis); *see also Smith v. State*, 534 S.W.3d 87, 91–92 (Tex. App.—Corpus Christi-Edinburg 2017, pet. ref'd) (concluding a constitutional violation and violation of article 33.03 and was harmless); *Jett v. State*, 319 S.W.3d 846, 854–55 (Tex. App.—San Antonio 2010, no pet.) (explaining defendant invited error, and any

23

violation of article 33.03 was harmless). A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *Tracy*, 14 S.W.3d at 827 (citations omitted). If after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial's outcome, a substantial right is not affected, and the error is harmless. *Id.* Here, nothing in the record shows Lane was denied a fair and impartial jury. *Gray v. State*, 233 S.W.3d 295, 298–99 (Tex. Crim. App. 2007) (discussing non-constitutional error in the context of jury selection). Therefore, even though Lane's statutory right to be present during all portions of voir dire was violated, the error did not affect a substantial right. *See Smith*, 534 S.W.3d at 91–92; *Jett*, 319 S.W.3d at 854–55; *Tracy*, 14 S.W.3d at 826–27. Having determined that the error, if any, did not affect a substantial right, we conclude if there was any error it was harmless.

Next, in issues one and four, Lane challenges his absence during voir dire under the Fifth Amendment and Sixth Amendment of the U.S. Constitution, and under article I, section 10 of the Texas Constitution. *See* U.S. CONST. amends. V, VI; Tex. Const. art. I, § 10. As stated above, a defendant can lose his constitutional right to be present at trial if, after he has been warned by the judge that he will be removed, he continues his disruptive behavior, he continues to conduct himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried

24

on with him in the courtroom. *Ramirez*, 76 S.W.3d at 129; *see also Allen*, 397 U.S. at 343. Additionally, expulsion is not constitutionally improper when a defendant fails to assure the trial court that he will remain quiet, and the trial court lacks any reason to believe his misbehavior will cease. *See Ramirez*, 76 S.W.3d at 130. We have detailed Lane's disruptive and unruly behavior before voir dire above and we conclude that his removal from the courtroom was not constitutionally improper. *See id.; see also Allen*, 397 U.S. at 343.

In his third issue, Lane argues that his removal from the courtroom denied him the right of self-representation as guaranteed by the Supreme Court in *Faretta v. California*, 422 U.S. 806 (1975). He argues that he was given the choice of self-representation or to have Krippel represent him, and that once he was removed, he was prohibited from acting as his own attorney during jury selection.

Lane contends his removal from the courtroom before voir dire essentially removed both the defendant and "his counsel" and thus temporarily terminated Lane's right to self-representation. However, Lane had another recourse since the trial judge ordered that Krippel be stand-by counsel for Lane, and Krippel conducted voir dire in Lane's absence. A review of the record suggests that Krippel conducted a proper voir dire on behalf of Lane and does not show the jury selected in Lane's absence was unfair or partial. *See Saunders v. State*, 721 S.W.2d 359, 363 (Tex. App.—Tyler 1985, pet. ref'd) (explaining that after the defendant's removal the trial

25

judge "should have directed stand-by counsel to conduct the voir dire examination of the jury panel[]"). Because Krippel, Lane's most recent court-appointed attorney, conducted voir dire in his absence, we cannot say that error was committed or that Lane was harmed. *See id.*

Accordingly, we overrule issues one, two, three and four.

**Self-Representation and Appointed Attorney**

In his fifth issue, Lane argues the trial court abused its discretion in denying him the opportunity to retain an attorney of his own choosing. According to Lane, his brother posted a $40,000 cash bond to secure his release from custody on July 3, 2023, but before he could be released, he was indicted for tampering with a witness, a felony, on July 13, 2024. According to Lane, the bond on a more recent charge was $100,000. Lane argues that he and his brother tried to get the $40,000 cash bond released so that he could hire an attorney, but the money was not released until June 2024, after his trial. He asserts that the trial court failed to protect his right to counsel of his choice by preventing the release of his funds earlier.

"The Sixth Amendment right to counsel attaches once the 'adversary judicial process has been initiated,' and it guarantees 'a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.'" *Pecina v. State*, 361 S.W.3d 68, 77 (Tex. Crim. App. 2012) (citations omitted). "The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of

26

the defendant's choosing." *Gonzalez v. State*, 117 S.W.3d 831, 836–37 (Tex. Crim. App. 2003) (citations omitted). "However, the defendant's right to counsel of choice is not absolute." *Id.* at 837 (citation omitted). In *Gonzalez*, the court explained that a defendant could not advocate for certain persons, including those not a member of the bar, and that the presumption of choice can be overridden by "other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id.* (citation omitted).

As detailed above, Lane was appointed at least five attorneys that all requested to withdraw from the case based on either Lane's abusive behavior and/or desire to hire an attorney of his choice. The trial court gave Lane months to hire an attorney, even continuing the case for that purpose, and he did not. Lane continuously argued for his cash bond to be released. Though Lane argued that the trial court ordered the release of the funds but refused to allow him to use the funds to hire an attorney, Lane has provided no evidence of the trial obstructing his use of the funds. Nor does Lane specify where in the record the trial court obstructed his use of his funds or ordered that they be used in a particular way. Accordingly, the trial court did not abuse its discretion in denying Lane the opportunity to be represented by counsel of his choice. *Rosales v. State*, 841 S.W.2d 368, 374 (Tex. Crim. App. 1992). We overrule issue five.

In issues six, seven, and eight, Lane challenges his right to self-representation. He argues that the trial court abused its discretion in ordering him to represent himself after he displayed his dissatisfaction with court appointed counsel, in ordering him to represent himself in that the waiver of counsel was not voluntarily entered, and because his waiver of his right to counsel was involuntary. Lane argues that the trial court ordered the release of funds on April 25th, and knowing that money was available, refused to allow Lane the opportunity to use that money to retain counsel on May 6th. Lane argues that he was forced to choose between an objectionable attorney or representing himself.

"It has long been held in this State that a trial court may not force an accused to accept an attorney if he wishes to waive representation and defend himself." *Webb v. State*, 533 S.W.2d 780, 783 (Tex. Crim. App. 1976) (citations omitted). "Further, an accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Id.* at 784 (citations omitted). "Thus, an accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel." *Id.* (citations omitted).

The right to counsel may be waived if such waiver is made voluntarily and with knowledge of the consequences thereof. *Jordan v. State*, 571 S.W.2d 883, 884 (Tex. Crim. App. 1978) (citing *Faretta*, 422 U.S. at 835) (other citations omitted).

28

This right is a fundamental right, and counsel may indulge every reasonable presumption against waiver of counsel. *Id.* at 884. The record must clearly show that the accused voluntarily, knowingly, and intelligently waived his right to counsel in order to assert his right to represent himself. *Id.*

A trial court has discretion to grant or deny a request to change counsel on the morning of trial. *Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet. ref'd); *see also United States v. Magee*, 741 F.2d 93, 95 (5th Cir.1984). "A trial court's refusal to appoint counsel at the eleventh hour does not render the defendant's invocation of the right to self-representation involuntary." *Davis v. State*, No. 09-15-00450-CR, 2017 WL 1953277, at *3 (Tex. App.—Beaumont May 10, 2017, no pet.) (mem. op., not designated for publication) (citing *Tutt v. State*, 339 S.W.3d 166, 173 (Tex. App.—Texarkana 2011, pet. ref'd)).

Here, Lane was appointed five attorneys to represent him during this criminal proceeding. The trial court appointed Lane's first attorney in September 2021. Trial began on May 6, 2024, almost three years later. On the day of voir dire, Lane sought to dismiss Krippel and hire an attorney of his choice. The trial court gave Lane the *Faretta* warnings and detailed the timeframe that Lane was unrepresented due to his claim that he was hiring an attorney but did not. The trial court also found that Lane's actions on the morning of voir dire were dilatory in nature meant to delay the court proceedings. The trial court gave Lane the option to either continue with Krippel as

29

his attorney or represent himself, though Lane continued to contend that he wanted to hire an attorney. The trial court further explained that Lane exhibited the same behavior two years prior, in November 2022, when he demanded new counsel on the eve of trial. Based on Lane's behavior, it was reasonable for the trial court to find that his behavior was dilatory in nature. Thus, the trial court did not abuse its discretion by ordering that Lane represent himself and that Krippel assist in preserving the record. *See Webb*, 533 S.W.2d at 784 (explaining that a defendant may not exercise his right to self-represent or select his own counsel to manipulate court procedure or interfere with the fair administration of justice).

We overrule issues six, seven, and eight.

**Evidentiary Challenge**

Next, Lane challenges the exclusion of a 669-page Cellebrite report in several issues. He argues that the trial court abused its discretion in sustaining the State's authentication objection to the report, that his right to cross-examine witnesses was abrogated by the trial court's refusal to permit him to use the entire report, and his right to present a defense was abrogated by the sustaining of the exclusion of the report as evidence.

We review the trial court's admission of evidence under an abuse of discretion standard. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). An appellate court reviewing a trial court's ruling on the admission or exclusion of

30

evidence must do so in the light of the arguments, information, and evidence available to the trial court at the time it ruled. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). We uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Wheeler*, 67 S.W.3d at 888 (citations omitted).

At trial, Tori Lowe, forensic analyst and criminal intelligence analyst with the Montgomery County Constable's Office testified at trial. She explained that her duties included downloading information from cell phones and other small devices. She testified that she received training and basic certification at Cellebrite school, which is the software used to extract information from cell phones. In 2020, she received training at their advanced school to become an expert. Lowe stated that she used Cellebrite to extract information from Cathy's cell phone. She testified that a report was generated from the extraction from the device.

Lowe was shown State's exhibits 84, 85, 86, 87, and 88, and stated that they were excerpts of the Cellebrite generated reports specific to certain dates, times, and phone numbers. She testified that she generated and reviewed the reports and that they fairly and accurately represent the reports she created in preparation for trial. The State then offered the excerpts from the full report generated from the extraction as exhibits 84, 85, 86, 87, and 88. Lowe testified that the entire report was more than 500 pages.

A review of the record shows that of the entire Cellebrite report, only the excerpts included as exhibits 84, 85, 86, 87, and 88 were authenticated through Lowe's testimony and admitted as exhibits. The entire Cellebrite report was not offered or admitted as evidence during the trial. During the trial, Lane stated that he wanted to get certain text messages admitted as evidence, and the trial court then heard the State's many objections to certain portions of the messages. After hearing and sustaining the State's objections, the messages were marked as defense exhibit 1. When Lane wanted to get additional Cellebrite extractions admitted as evidence, the trial court informed Lane that those portions had not been authenticated and Lowe, the Cellebrite expert, had been dismissed as a witness. Though Lowe did authenticate the portions of the Cellebrite extraction admitted as evidence, she did not authenticate other portions of the extraction by confirming that she reviewed the extraction and they accurately represented the report. *See Wright v. State*, 618 S.W.3d 887, 893–94 (Tex. App.—Fort Worth 2021, no pet.) (explaining that Cellebrite extraction was authenticated when the detective explained the process and corroborated that the extractions accurately copied the text messages). This includes the portions of the Cellebrite report that Lane attempted to offer as evidence.

Having determined that the portions of the Cellebrite report that were not admitted as evidence were not properly authenticated, the trial court did not abuse

its discretion in excluding those portions of the report as evidence. *See id.* We overrule issues nine, ten, and eleven.

**Courtroom Appearance**

In his final issue, Lane argues that the trial court abused its discretion by ordering that he be tried with his ankles shackled and chains around his waist and arms. He contends that being shackled undermined the presumption of innocence and right to a fair trial guaranteed by the United States Constitution. He also argues that the trial court's decision that he be shackled was not justified and thus, he was harmed.

The Fourteenth Amendment of the United States Constitution and article I, section 19 of the Texas Constitution guarantee criminal defendants the right to a fair trial. U.S. CONST. amend. XIV; Tex. Const. art. I, § 19. To ensure that a defendant receives a fair trial, "[t]he law has long forbidden the use of visible shackles during the guilt phase" of a criminal defendant's trial. *See Wiseman v. State*, 223 S.W.3d 45, 50 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citations omitted).

While a trial court may not routinely require a defendant to appear in shackles before a jury during either the guilt or punishment phase of trial, exceptional circumstances may demand that a trial court shackle a defendant. *See Jackson v. State*, No. 09-21-00141-CR, 2022 WL 16626777, at *11 (Tex. App.—Beaumont Nov. 2, 2022, no pet.) (mem. op., not designated for publication) (citing *Deck v.*

*Missouri*, 544 U.S. 622, 628–29 (2005)). For example, such circumstances may arise when a defendant has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel, thereby implicating an essential state interest, namely, courtroom security. *Wiseman*, 223 S.W.3d at 50 (citations omitted). "[A] trial court must state with particularity its reasons for shackling a defendant." *Id.* We consider the trial court's determination under an abuse of discretion standard. *Id.*

On the day of voir dire, Lane appeared in the courtroom shackled throughout the discussion regarding his courtroom attire and his attorney. During the discussion, Krippel requested that Lane's shackles be removed, but before the trial court ruled, a discussion regarding Lane's representation during voir dire commenced. Krippel again asked that Lane's shackles be removed during the discussion and the trial court stated that the shackles will remain, but one restraint was removed so that Lane could write. Shortly thereafter, Lane attacked Krippel by grabbing his shirt and tie before he was removed from the courtroom. Lane continued to behave violently and disorderly in the holding cell. The trial court noted that Lane had five attorneys appointed and all either asked to withdraw or asked to be dismissed after Lane acted in a manner that caused them to be afraid for their health and safety.

During the discussion of Lane's behavior, Krippel questioned if Lane was removed in view of the venire panel. The bailiff responded that the hallway was cleared the best they could to get Lane to the holding cell. Krippel then objected to

34

the venire panel based on his belief that the size of the panel and the logistics would not allow Lane to avoid being seen shackled. The State argued that there was no evidence that any venire panel member saw Lane shackled.

The trial court denied Krippel's request and stated that the venire panel does not know who Lane is, that he had been removed from the courtroom due to his behavior, and that it had been over an hour since his removal and any panel member in the area likely was not paying attention.

Prior to the State presenting its case, Krippel brought up Lane's attire and restraints. The trial court asked Lane if he wanted to change clothes, but Lane refused to answer the question and continued to state that he wanted to make the court aware of his grievance and that he did not want Krippel to represent him. The trial court informed Krippel that he could sit further away from Lane and stated that Lane refused to change into civilian clothes and that all materials, except what Lane had, would be removed from the table for everyone's safety. The trial court authorized the release of Lane's right hand for writing.

Lane's restraints were raised by the State when discussing how to keep the shackles out of view of the jury and it was determined that the Court's concern for safety outweighed the visibility of the shackles. The trial court again expressed its concern that Lane dress in civilian clothes, but he had refused.

On the third day of trial, Lane refused to attend. A recorded jail call was played and Detective David Stovall testified that the recording was Lane's voice and that Lane stated that he was pulling a stunt to stop the trial. The trial court stated that it had a concern for the safety of the jurors after it was revealed that Lane had a list of potential jurors. The trial court also held a Zoom conference with Lane regarding his refusal to attend trial and informed Lane that trial would not stop. During the conference, Lane would not answer when he was asked whether he was refusing to attend trial; he continued to interrupt and speak over the trial judge. Due to his lack of response, the trial court determined that Lane was refusing to attend, and trial would proceed. Trial resumed in Lane's absence. Lane later came to the courthouse but refused to wear civilian clothes. Lane promised to behave to remain in the courtroom. Lane's promise was short-lived, as he continued to make outbursts and was removed until he again promised to behave. Trial concluded for the day, and Lane attended the remainder of trial.

Here, the trial court stated that Lane was shackled for the safety of those in the courtroom after Lane assaulted Krippel by grabbing his shirt and tie. Based on Lane's attack of Krippel, behavior in the holding cell, and disruptive behavior throughout trial, it is reasonable that the trial court was concerned for the safety of those in the courtroom. *See Wiseman*, 223 S.W.3d at 50. Therefore, the trial court did not abuse its discretion by requiring that Lane be tried in shackles. *See id.*

We overrule issue twelve.

## Conclusion

Having considered and overruled Lane's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on March 5, 2026
Opinion Delivered July 29, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.